No. 62,094

In the Matter of ROBERT E. DIEHL, *Respondent.*

(757 P.2d 732)

Opinion filed July 8, 1988.

*Bruce E. Miller,* disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* deputy disciplinary administrator, was with him on the brief for petitioner.

*Mark F. Anderson,* of Joseph, Robison & Anderson, of Wichita, argued the cause and was on the brief for respondent.

*Per Curiam*: This is an original action in discipline initiated by Bruce Miller, disciplinary administrator, against Robert E. Diehl, an attorney admitted to the practice of law in Kansas, alleging respondent had violated Canon 1 of the Code of Professional Responsibility by Failing to Maintain the Integrity of the Legal Profession (Rule 225, 1987 Kan. Ct. R. Annot. 122). A panel of the Board for Discipline of Attorneys conducted a hearing upon the allegations of the complaint and on March 23, 1988, filed a final hearing report in which two members recommended public censure, finding that the respondent's acts did not reflect moral turpitude, but were private in nature and did not involve clients. One member determined that the respondent had violated a public trust and undermined the administration of justice and recommended indefinite suspension. As no exceptions to the report were filed by the respondent, the facts as found by the panel are not in dispute.

In May of 1985, respondent was the county attorney for Ellis County, Kansas. After respondent learned that he was one of the individuals targeted in a drug investigation, he resigned his public office in July, 1985. On December 2, 1986, respondent pled guilty to one count of an amended information charging him with possession of marijuana on May 23, 1985, in violation of K.S.A. 65-4127b, a Class A misdemeanor.

Respondent has admitted the allegations in Count I of the amended formal complaint that he violated DR 1-102(A)(5) (1987 Kan. Ct. R. Annot. 123) by engaging in conduct that was prejudicial to the administration of justice and DR 1-102(A)(6) by engaging in other conduct that adversely reflects on his fitness to practice law as alleged in Count II, when on May 23 and 24,

1985, respondent in two separate telephone conversations asked a third party to sell marijuana to him.

In the criminal proceedings in Ellis County, Kansas, respondent was originally charged with attempting to purchase cocaine, a felony. Prior to trial, the State refused the respondent's offer to plead guilty to a reduced charge of possession of marijuana. During the trial, the prosecution's main witness testified that the respondent had attempted to buy marijuana for personal use, not cocaine. After the jury retired to deliberate, it informed the court that it was deadlocked at 11 to 1.

Respondent's offer to plead guilty to a reduced charge of possession of marijuana was accepted by the State. After the plea agreement, it was determined that the jury had been deadlocked 11 to 1 for acquittal.

Respondent's conviction for possession of marijuana is based upon his statements to the judge at the plea hearing. Respondent was sentenced to confinement in the Ellis County jail for 30 days, fined $2,500, and ordered to pay the costs of the action. The court granted respondent probation and gave him six months to pay the fine and costs.

Admitted into evidence at the disciplinary hearing were numerous testimonials of respondent's good reputation in the community and of his competent, conscientious, and professional legal ability, both while as county attorney and, after his trial and conviction, in private practice. There was no evidence that respondent's professional conduct had ever been influenced by his use of drugs. There was ample evidence of respondent's full cooperation with the Disciplinary Administrator's office in these proceedings, his remorse for his actions, and his many public and private apologies for his conduct. There is no question but that respondent's possession of marijuana was purely for personal use and not for profit.

While Kansas has not disciplined an attorney for conviction of possession of marijuana, other jurisdictions have addressed the issue. In *Matter of Higgins*, 105 App. Div. 2d 462, 480 N.Y.S.2d 257 (1984), respondent pled guilty to possession of marijuana in the fourth degree, a misdemeanor. The marijuana seized was for his personal use. The New York Supreme Court, Appellate Division, found respondent's conduct was not conduct involving

moral turpitude or prejudicial to the administration of justice, stating:

"The crime to which respondent pleaded does not involve a grave infringement of the moral sentiment of the community, but rather is criminal by virtue of its statutory prohibition. . . . At no time did respondent's crime disadvantage a client, or impede or impair the quality, competence, reliability and trustworthiness of his professional conduct and the fulfillment of his professional obligations." 105 App. Div. 2d at 462-63.

The court ordered public censure.

In *Matter of Turner*, 463 N.E.2d 477 (Ind. 1984), respondent pled guilty to possession of marijuana, a misdemeanor. The Indiana Supreme Court ordered public reprimand, stating respondent's involvement with an illegal substance not only violated a law of the state, but reflected adversely on the integrity of the legal profession. 463 N.E.2d at 478.

In two New York cases involving assistant district attorneys found guilty of the sale of marijuana, the courts found public censure to be the appropriate punishment. See *Matter of Director*, 82 App. Div. 2d 606, 442 N.Y.S.2d 553 (1981); *Matter of Wolfson*, 82 App. Div. 2d 587, 442 N.Y.S.2d 548 (1981).

We agree with the minority member of the board that we must consider (1) that the respondent was the chief law enforcement officer of the county when he committed the crimes; (2) that it was the license to practice law that qualified the respondent for the office and; (3) that the license and the office require a high standard of conduct in order to preserve the public trust in the profession and respect for our system of justice.

In *State v. Scott*, 230 Kan. 564, Syl. ¶ 4, 639 P.2d 1131 (1982), we set forth mitigating factors to be considered in determining the nature and extent of the discipline for a breach of professional responsibility, as follows:

"(1) Whether restitution has been made; (2) previous violations or the absence thereof; (3) previous good character and reputation in the community; (4) the present and past attitude of the attorney as shown by his cooperation during the hearing and acknowledgment of the transgression; (5) letters from clients, friends and lawyers in support of the character and general reputation of the attorney; and (6) any statement by the complainant expressing satisfaction with restitution and requesting no discipline."

Application of these mitigating factors weighs in respondent's favor. Before this offense, respondent's record was spotless. Letters from the community and from his peers requested len-

iency and compassion. He has accepted full responsibility for his conduct, apologized to the public and the courts at his sentencing hearing, and has cooperated fully in these disciplinary proceedings. Prior to the amendment of Supreme Court Rule 203 (1987 Kan. Ct. R. Annot. 102), this court limited the forms of discipline it imposed to disbarment, suspension, and public or private censure. The expansion of the option in Rule 203(a)(5), as amended March 1, 1988, to tailor disciplinary sanctions to the needs and circumstances of individual respondents allows this court to place restrictions and requirements on the person's practice of law and/or on the person licensed. See Rule 203(a)(5), Rules Relating to Discipline of Attorneys, March 1, 1988.

IT IS THEREFORE ORDERED that Robert E. Diehl be and he is hereby disciplined by public censure for his violations of the Code of Professional Responsibility.

IT IS FURTHER ORDERED that the respondent perform 100 hours of pro bono legal service which shall be completed by July 1, 1989. In addition, the respondent is to submit to four random drug tests during this period and pay the cost of the tests.

IT IS FURTHER ORDERED that the respondent shall be under the supervision of the disciplinary administrator, who is authorized to appoint an attorney to supervise and insure that the respondent complies with the orders of this Court. The disciplinary administrator shall approve the pro bono legal services to be performed, select the method and dates of the drug tests, and verify the respondent's compliance with this order.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs herein be assessed to the respondent.