No. 86,308

In the Matter of GARY L. CONWELL, *Respondent.*

(20 P.3d 1260)

Opinion filed April 20, 2001.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Steven D. Rosel,* of Topeka, argued the cause for respondent, and *Gary L. Conwell,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Disciplinary Administrator's office against Gary L. Conwell, an attorney admitted to the practice of law in Kansas.

A formal complaint was filed against respondent, alleging violations of Kansas Rules of Professional Conduct 8.4 (2000 Kan. Ct. R. Annot. 420) (misconduct).

A formal hearing was held before a panel of the Kansas Board for Discipline of Attorneys on November 15, 2000. Respondent appeared in person and by Steven D. Rosel. The Disciplinary Administrator, Stanton A. Hazlett, appeared for petitioner. The respondent stipulated to the facts as set forth in the formal complaint and to the violations of the Kansas Rules of Professional Conduct 8.4(b) and 8.4(d).

The matter proceeded to hearing and the disciplinary panel found the following facts were established by clear and convincing evidence:

"On April 10, 1999, at approximately 6:00 a.m., law enforcement officers went to the Respondent's residence to execute a search warrant. The Respondent answered the door. At that time, the officers searched the Respondent and found a 'snorter tube with a glass vial.' The Respondent told the officers that the tube contained cocaine. Additionally, the Respondent told the officers that he had last snorted cocaine at 1:00 a.m. The officers also found marijuana and items of drug paraphernalia in the Respondent's house.

"The Kansas Bureau of Investigation weighed and tested the substance in the vial and found that it was .12 grams of cocaine.

"Prior to the institution of formal criminal charges, the Respondent underwent a substance abuse evaluation and a psychological evaluation. The psychological

evaluation included extensive testing. Larry Huey, LSCSW with Heartland Clinical Consultants and George Hough, Ph.D., conducted the evaluations. Mr. Huey concluded that the Respondent is 'chemically nondependent.' . . .

. . . .

"On September 15, 1999, the Respondent was charged in the District Court of Shawnee County, Kansas, with possession of cocaine, possession of marijuana, and possession of drug paraphernalia.

"On September 25, 1999, the Respondent wrote to Stanton A. Hazlett, pursuant to Kan. Sup. Ct. R. 203(c)(1), and reported that he had been charged with having committed a felony crime.

"Shortly after being charged with the criminal violations, the Respondent voluntarily ceased practicing law. At the hearing on this matter, the Respondent testified that it was his intention to refrain from practicing law at least until the disciplinary complaint had been heard and decided.

"On October 1, 1999, the Respondent began working for H.T. Paul Company. H. T. Paul Company is engaged in developing and leasing real estate. In that capacity, the Respondent reviews leases and negotiates contracts with banks and attorneys.

"Thereafter, the Respondent and the Shawnee County District Attorney entered into a Diversion Agreement. The Diversion Agreement, filed March 7, 2000, spans a period of 24 months and contains the following conditions:

"1. That he . . . refrain from violating any of the laws of the United States or of any state, or ordinance of the City of Topeka, Kansas.

"2. That he . . . report to this Court, the Shawnee County District Attorney's Officer [*sic*] or any other person at any time that he . . . may be ordered to do so by the Court, or anyone so designated by the Court.

"3. That he . . . conduct himself at all times as a law abiding citizen.

"4. That he . . . advise the diversion coordinator of any changes in address or employment during the period of his . . . diversion.

"5. That he . . . pay court costs in the amount of $134.50 within 12 months.

"6. That he . . . pay Diversion Maintenance Fee of $75.00 within 12 months.

"7. That he . . . pay the cost of collecting any court debt or restitution not paid during the duration of the diversion, including but not limited to, court costs, restitution and attorney fees.

"8. That he . . . pay KBI lab fees in the amount of $150.00 within 12 months (payable through the Clerk of the District Court for disbursement to KBI, 1620 SW Tyler, Topeka Ks 66612)

"9. That he . . . provide documentation that he has attended substance abuse treatment and will abide by all recommendations for followup [*sic*] treatment and seek inpatient treatment, if recommended, during his diversionary period.

"10. That he . . . abstain from the practice of law for one (1) year commencing December 1, 1999.

"11. That he . . . complete 50 hours of community service with youths who have abused drugs and provide verification thereof.

"12. That he . . . submit to random urinalysis.

"At the hearing on the Formal Complaint, the Respondent testified that he has paid all costs detailed in the Diversion Agreement, that he has conducted himself as a law abiding citizen, that he has completed the treatment recommended in the substance abuse evaluation and the psychological evaluation, and that he has abstained from practicing law. The Respondent also testified that he has not yet completed the 50 hours of community service work."

## The hearing panel made the following conclusion of law:

"KRPC 8.4 provides, in pertinent part, as follows:
'It is professional misconduct for a lawyer to:

. . . .

'(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

. . . .

'(d) engage in conduct that is prejudicial to the administration of justice.'
Id. In accordance with the Respondent's stipulation, the Hearing Panel concludes that the Respondent violated KRPC 8.4(b) and KRPC 8.4(d)."

## The panel made the following recommendation:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to the public to maintain personal integrity.

"*Mental State*. The Respondent knowingly violated his duty to the public to maintain personal integrity.

"*Injury*. As a result of the Respondent's misconduct, the legal profession was injured.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factor present:

"Illegal Conduct. The Respondent was charged with possession of cocaine, marijuana, and drug paraphernalia. Possession of cocaine is a level 4, nonperson drug felony. Possession of marijuana and possession of drug paraphernalia are class A nonperson misdemeanors. The Respondent entered into a Diversion Agreement regarding the charges.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommen-

dation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of Prior Disciplinary Record. The Respondent has not previously been disciplined for misconduct.

"Absence of Dishonest or Selfish Motive. The misconduct in this case did not involve dishonesty or selfishness.

"Present and Past Attitude of Cooperation. The Respondent's attitude is a mitigating circumstance in this case. The Respondent self-reported the misconduct. He fully cooperated with the investigation and prosecution of the disciplinary case. The Respondent fully and freely acknowledged the misconduct.

"Previous Good Character and Reputation. The Respondent is an active and productive member of the bar in Topeka, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"Imposition of Other Penalties or Sanctions. The Respondent was charged in the District Court of Shawnee County, Kansas, with having committed three crimes, entered into a Diversion Agreement, paid the costs associated with the criminal proceeding, and ceased practicing law for a period of time in excess of 12 months. Accordingly, other penalties and sanctions have been imposed against the Respondent.

"Remorse. Clearly, at the hearing on this matter, the Respondent expressed genuine remorse for engaging in the misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 5.13. That standard provides, in pertinent part:

'Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that . . . adversely reflects on the lawyer's fitness to practice law.' *Id.*

"In *In re Diehl*, 243 Kan. 580, 757 P.2d 732 (1988), Robert E. Diehl, a county attorney at the time the misconduct occurred, was charged with attempting to purchase cocaine. During the course of the jury trial on that charge, Mr. Diehl entered a plea of guilty to possession of marijuana. There was evidence, however, that in two separate telephone conversations Mr. Diehl asked a third party to sell him marijuana. *Id.* at 580-81. In examining the mitigating circumstances present in the *Diehl* case, the Kansas Supreme Court stated:

'Admitted into evidence at the disciplinary hearing were numerous testimonials of respondent's good reputation in the community and of his competent, conscientious, and professional legal ability, both while as county attorney and, after his trial and conviction, in private practice. There was no evidence that respondent's professional conduct had ever been influenced by his use of drugs. There was ample evidence of respondent's full cooperation with the Disciplinary Administrator's office in these proceedings, his remorse for his actions, and his many public and private apologies for his conduct. There is no question but that respondent's possession of marijuana was purely for personal use and not for profit.'

*Id* at 581. Diehl was publicly censured, ordered to perform 100 hours of *pro bono* legal service, ordered to submit to four random drug tests, and subjected to the supervision of the Disciplinary Administrator. *Id.* at 583.

"Another similar case, *In re Smoot,* can be found at 243 Kan. 589, 757 P.2d 327 (1988). In that case, Bradley J. Smoot entered a plea of guilty in the United States District Court of the District of Kansas to one count of possession of cocaine. Mr. Smoot possessed approximately one gram of cocaine. For his misdemeanor conviction, the Respondent served four months in a federal detention facility. Mr. Smoot voluntarily removed himself from the practice of law and did not practice throughout the pendency of the disciplinary complaint. Additionally, each of the mitigating factors present in *Diehl* was also present in *Smoot.* Mr. Smoot, like Mr. Diehl was publicly censured, ordered to perform 100 hours of *pro bono* legal service, and subjected to the supervision of the Disciplinary Administrator. *Id.* at 589-90.

"In this case, just as in *Diehl* and *Smoot,* there was evidence of the Respondent's good reputation in the community and of the Respondent's competent, conscientious, and professional legal ability. Additionally, there was no evidence that the Respondent's professional conduct has ever been influenced by his use of drugs. There was ample evidence of the Respondent's full cooperation with the Disciplinary Administrator's office in the disciplinary proceedings, his apologies for his misconduct, and his genuine remorse. Also, there is no question but that the Respondent's use of cocaine was purely for personal use and not for profit. Finally, just as in *Smoot,* the Respondent voluntarily removed himself from the practice of law during the pendency of the disciplinary complaint.

"Because the mitigating circumstances present in *Diehl* and *Smoot* are present in this case, the Hearing Panel unanimously recommends that Respondent be publicly censured.

"Additionally, the Hearing Panel recommends that the Respondent develop an association with a member of the Impaired Lawyers Committee, meet with the member of the Impaired Lawyers Committee as frequently as requested by the member, and provide proof of compliance with this recommendation to the Disciplinary Administrator on a quarterly basis."

Respondent filed no exceptions to the report and recommendation of the panel. The court, having considered the record and report of the panel, accepts and concurs in the findings, conclusion, and recommendation of the hearing panel.

IT IS THEREFORE ORDERED that Gary L. Conwell be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2000 Kan. Ct. R. Annot. 224) for his violation of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that this opinion shall be published in the official Kansas Reports and that the costs herein be assessed to the respondent.