IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,463

In the Matter of SCOTT MINTER,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed February 12, 2016. Indefinite suspension.

*Kimberly L. Knoll,* Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Pedro Irigonegaray*, of Irigonegaray & Associates, of Topeka, argued the cause, and *Scott Minter*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Scott Minter, of Lawrence, an attorney admitted to the practice of law in Kansas in 2011.

On October 16, 2014, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on March 17, 2015, which incorporated a joint stipulation of facts. A corrected joint stipulation of facts was filed on August 18, 2015. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on August 18, 2015, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 8.4(b) (2015 Kan. Ct. R. Annot. 672) (commission of a

1

criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"8.     On January 8, 2014, the Douglas County, Kansas, District Attorney's office charged the respondent in an information, alleging seven felony crimes. The charges included:

- two counts of distribution of marijuana, in an amount between 25 grams and 450 grams;
- one count of possession with intent to distribute at least 450 grams but less than 30 kilograms of marijuana;
- one count of cultivation of marijuana;
- two counts of possession of drug paraphernalia; and
- one count of possession of marijuana without a tax stamp.

On January 13, 2014, the court dismissed the count of possession of marijuana without a tax stamp for lack of probable cause. Based upon the six remaining felony offenses, an arrest warrant was issued. On January 17, 2014, the respondent was arrested on the warrant.

"9.     On May 13, 2014, the Douglas County, Kansas, District Attorney's office filed an amended information charging the respondent with two counts of possession with intent to distribute less than 25 grams of marijuana (level 4 felony), and one count of drug paraphernalia (level 5 felony). The respondent entered a plea of no contest to the three charges in the amended information.

2

"10.     On July 10, 2014, the court sentenced the respondent to a total of 15 months in the custody of the Kansas Department of Corrections. The respondent served 10 months in prison. On May 6, 2015, the respondent was released from incarceration. The respondent will remain on post-incarceration supervised release until May 2017.

"11.     At the hearing on the formal complaint, the respondent testified that the felony charges stemmed from him selling marijuana to a long-time friend on two occasions.

"*Conclusions of Law*

"12.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.4(b), as detailed below.

"13.     'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the respondent was convicted, by his plea, of three drug felonies: two counts of possession of marijuana with an intent to distribute and one count of possession of drug paraphernalia. The crimes which the respondent was convicted of adversely reflect on the respondent's fitness as a lawyer. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"14.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

3

"15.     *Duty Violated*.  The respondent violated his duty to the public to maintain his personal integrity.

"16.     *Mental State*.  The respondent intentionally violated his duty.

"17.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to the legal profession.

"Aggravating and Mitigating Factors

"18.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"19.     *A Pattern of Misconduct*.  The respondent engaged in a pattern of misconduct. The respondent testified that he used marijuana every day of his adult life, until his arrest in March 2013.

"20.     *Illegal Conduct, Including Conduct Involving the Use of Controlled Substances*.  The respondent was convicted, by his plea, of three felony drug crimes.

"21.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"22.     *Absence of a Prior Disciplinary Record*.  The respondent has not previously been disciplined.

"23.     *Absence of a Dishonest or Selfish Motive*.  The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

4

"24. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The respondent suffers from an addiction to marijuana. It is clear that the respondent's chemical dependence contributed to his misconduct.

"25. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent self-reported the misconduct and took responsibility for his actions. Thereafter, the respondent fully cooperated with the disciplinary process, admitted the underlying facts, and stipulated to the violation of the Kansas Rules of Professional Conduct. The respondent's cooperation with the disciplinary administrator's office is a significant mitigating factor.

"26. *Inexperience in the Practice of Law.* The Kansas Supreme Court admitted the respondent to the practice of law in 2011. While the respondent's misconduct was not related to the practice of law, nonetheless, he is inexperienced in the practice of law.

"27. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent was an active and productive member of the bar of Topeka, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by the earnest testimony of Gary Hinck as well as by many compelling letters received by the hearing panel.

"28. *Chemical Dependency Including Drug Abuse.* The respondent testified that prior to his arrest, he used marijuana every day of his adult life. Clearly, the respondent was dependent on marijuana at the time he committed the misconduct. The respondent's chemical dependence caused the respondent's misconduct. The respondent, however, has not used marijuana since March 2013, the date of his initial arrest. Thus, the respondent demonstrated that he is in recovery and that he has been in recovery for a meaningful and sustained period of time. Because the respondent's misconduct centered on his use of marijuana, it appears that the respondent's recovery has arrested the

5

misconduct and recurrence of the misconduct is unlikely. The hearing panel concludes that the respondent's chemical dependence is a significant mitigating factor.

"29.    *Imposition of Other Penalties or Sanctions*.  Following his convictions, the respondent served 10 months in prison. The respondent remains on post-incarceration supervision. The hearing panel concludes that the respondent has experienced significant penalties and sanctions.

"30.    *Remorse*.  At the hearing on this matter, the respondent expressed genuine, heartfelt remorse for having engaged in the misconduct.

"31.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.11    Disbarment is generally appropriate when:  . . . a lawyer engages in serious criminal conduct a necessary element of which includes . . . the sale, distribution or importation of controlled substances; . . .

'5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

'7.1    Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a

6

professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"32.     The disciplinary administrator argued that the facts and Standards establish that the appropriate discipline in this case is disbarment. The respondent urged the hearing panel to recommend that the respondent's license be suspended.

"33.     The hearing panel has carefully considered what discipline to recommend in this case. The respondent is a young man (32 years of age) with a serious chemical dependence. The hearing panel was impressed with the respondent's presentation at the hearing on the formal complaint. The hearing panel is convinced that the respondent genuinely appreciates the seriousness of his misconduct. The sincere testimony of Mr. Hinck and the letters presented in support of the respondent were also impressive. Based upon the significant mitigating circumstances, the hearing panel is inclined to provide this young man with a light at the end of the tunnel. An indefinite suspension from the practice of law will properly protect the citizens of the State of Kansas while offering the respondent some hope that eventually he may be able to resume the practice of law.

"34.     Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be indefinitely suspended.

"35.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties to determine (1) whether violations of the

KRPC exist and, (2) if they do, the appropriate measure of discipline. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2015 Kan. Ct. R. Annot. 350). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent received adequate notice of the formal complaint, to which he filed an answer, and adequate notice of both the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing report. As such, we deem the findings of fact admitted. Supreme Court Rule 212(c), (d) (2015 Kan. Ct. R. Annot. 369).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 8.4(b) (2015 Kan. Ct. R. Annot. 672) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and it supports the panel's conclusions of law. We therefore adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. The hearing panel unanimously recommended indefinite suspension. At the hearing before this court, at which the respondent appeared, the respondent asked us to adopt the panel's recommendations, but the Disciplinary Administrator continued to recommend disbarment.

The Disciplinary Administrator emphasizes that the respondent's convictions were for two counts of possession of marijuana *with an intent to distribute* and argues this

intent—as compared to mere possession for personal use—places this case firmly within the ABA standard calling for disbarment.

The Disciplinary Administrator also calls our attention to *In re Diggs*, 256 Kan. 193, 883 P.2d 1182 (1994). In that case, Donald H. Diggs pleaded guilty to and was convicted of one count of possession of a controlled substance (crack cocaine) with intent to distribute; he was sentenced to a term of 7 1/2 years in prison followed by supervised release for a term of 5 years. Diggs' criminal conduct led to disbarment. 256 Kan. at 195.

The Disciplinary Administrator argues a similar discipline is appropriate in the instant case because the ABA guidelines focus on the intent to distribute rather than the type of controlled substances at issue. While the intent is the key under the ABA standard, we nevertheless note a significant difference in the severity level and resulting punishment for the *Diggs* crime as compared to the respondent's. More significantly, both the *Diggs* hearing panel and this court emphasized Diggs' prior discipline, noting he had been "disciplined by public censure in 1988 after pleading guilty to four counts of presenting a false claim and one count of unlawful deprivation of property, all class A misdemeanors. *In re Diggs*, 243 Kan. 587, 757 P.2d 326 (1988)." 256 Kan. at 194.

Diggs is not the only case in which a conviction for possession of a controlled substance with intent to distribute led to a respondent's disbarment. This court ordered disbarment in *In re Brown*, 263 Kan. 571, 953 P.2d 1367 (1998), which arose after Fred H. Brown was convicted of two felonies in federal court: conspiracy and possession of cocaine with intent to distribute. Citing *Diggs*, this court ordered disbarment after emphasizing the severity level of the crimes of conviction and noting that "Brown had two prior drug convictions (the 1992 Nebraska infraction and the 1974 Virginia conviction) and also lied to the federal magistrate judge. The Disciplinary Administrator emphasizes Brown's disbarment in Nebraska." 263 Kan. at 579.

9

Both *Diggs* and *Brown* thus involved, in addition to intent to distribute a controlled substance, an attorney with prior or additional criminal convictions. A comparison of *Diggs* and *Brown* to another case, *In re Barritt*, 243 Kan. 519, 520, 757 P.2d 730 (1988), underscores the significance of prior criminal history as an aggravating factor. Dennis Barritt's disciplinary action arose after he was convicted of aiding and abetting the delivery of cocaine. In contrast to Diggs and Brown, Barritt had no prior criminal history or prior history of discipline, and this court did not find any other aggravating factor. Unlike Diggs and Brown, Barritt received indefinite suspension and not disbarment.

As we make these comparisons, we acknowledge our repeated statements that we are more concerned with the unique circumstances of the particular attorney discipline currently before us than with the discipline imposed in past cases. See, *e.g.*, *In re Busch*, 287 Kan. 80, 86-87, 194 P.3d 112 (2008). Nevertheless, those decisions can provide guidance, especially if they demonstrate a consistent pattern. The common thread in *Diggs*, *Brown*, and *Barritt*—specifically, the importance of an attorney's prior disciplinary and criminal history in determining whether disbarment is merited for possession and/or intent to distribute a controlled substance—also appears in other decisions.

Generally, discipline is more severe when aggravating factors such as those in *Diggs* and *Brown* exist or when the respondent commits multiple counts of misconduct. In contrast, discipline is less severe when aggravating factors are not present and the possession offense is the sole grounds for discipline. See, *e.g.*, *In re Alberg*, 296 Kan. 795, 294 P.3d 1192 (2013) (conviction for possession of marijuana compounded by additional misconduct of entering into contingent fee agreement in divorce case, converting and commingling client property, providing court with a billing statement

10

containing numerous false entries; attorney discipline of disbarment); *In re Robertson*, 256 Kan. 505, 886 P.2d 806 (1994) (conviction for possession of cocaine not aggravated by any other circumstance; attorney discipline of published censure); *In re Nelson*, 255 Kan. 555, 874 P.2d 1201 (1994) (conviction for attempted possession of cocaine aggravated by making false allegations that police had planted cocaine and compounded by additional violations for failure to keep client informed and failure to return retainer; attorney discipline of indefinite suspension; *In re Morris*, 251 Kan. 592, 834 P.2d 384 (1992) (conviction for possession of methamphetamine compounded by additional infraction for failing to refund retainer to client; attorney discipline of indefinite suspension), *reinstatement granted* 272 Kan. 1, 30 P.3d 1001 (2001); *In re McKenna*, 249 Kan. 215, 813 P.2d 929 (1991) (conviction for possession of marijuana not aggravated by any other circumstance with lack of prior discipline emphasized; attorney discipline of probation imposed); *In re Smoot*, 243 Kan. 589, 757 P.2d 327 (1988) (conviction for possession of cocaine not aggravated by any other circumstance; attorney discipline of published censure); *In re Diehl*, 243 Kan. 580, 757 P.2d 732 (1988) (conviction for possession of marijuana with no aggravating circumstances noted; attorney discipline of published censure).

After considering the ABA standard, the hearing panel's and Disciplinary Administrator's recommendations, and the pattern of our past cases, we conclude Minter's possession of a controlled substance with intent to distribute warrants a severe sanction— but the lack of any aggravating factors mitigates against imposing the most severe sanction of disbarment. Moreover, we note the significant mitigating factors found by the hearing panel, including the respondent's young age, his genuine remorse, his sustained and successful recovery from his chemical dependence, and his compelling support and respect from his peers.

We, therefore, unanimously accept the hearing panel's recommendation that the respondent be indefinitely suspended.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Scott Minter be and is hereby indefinitely suspended from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2015 Kan. Ct. R. Annot. 293).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2015 Kan. Ct. R. Annot. 401), and in the event respondent seeks reinstatement, he shall comply with the requirements of Supreme Court Rule 219 (2015 Kan. Ct. R. Annot. 403).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.